**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **TARIQ MUHAMMAD**, | Case No. 6:21-cv-77-SI |
| Plaintiff, | |
| v. | |
| **BRANDON KELLY,** *OSP Supt.*, **Cpl. Stair**, | |
| Defendants. | |
| **TARIQ MUHAMMAD**, | Case No. 6:21-cv-78-SI |
| Plaintiff, | |
| v. | |
| **FINN,** *Oregon State Penitentiary C.O.*, **ELLEN ROSENBLUM,** *Attorney General*, **JOHN/JANE DOES,** *OSP Mail Room*, | |
| Defendants. | |
| **TARIQ MUHAMMAD**, | Case No. 6:21-cv-107-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **C.O. Ruby,** *Oregon State Penitentiary*, **SGT. JOHN DOE**, | |
| Defendants. | |

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

The three above-captioned cases all assert claims by Plaintiff Tariq Muhammad (Muhammad) under 42 U.S.C. § 1983. Muhammad is an incarcerated adult in custody at the Oregon State Penitentiary (OSP), and he is representing himself *pro se* in these matters. Muhammad alleges that several OSP employees as well as Attorney General Ellen Rosenblum are violating his rights under the United States Constitution. Fairly and liberally construed, Muhammad also asserts violations of state law.

In each case, Defendants seek summary judgment against Muhammad's federal civil rights claims under § 1983, arguing that Muhammad failed to exhaust his administrative remedies through the Oregon Department of Correction's (ODOC) grievance system before filing his complaints. Although the Court is not consolidating these three cases, because they all involve the same issue and because the parties rely on many of the same exhibits and declarations in each case, the Court resolves Defendants' motions for summary judgment together in this Order, which will be separately entered in each case. For the reasons stated below, the Court agrees with Defendants that Muhammad has not exhausted his administrative remedies in any of the above-captioned cases and therefore grants Defendants' motions for summary judgment in each case. The Court also denies the several discovery motions filed in two of these cases and the request for judicial notice filed in one of them.

**STANDARDS**

**A. Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th

Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of

the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## B.  The op Exhaustion Requirement

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, provides in relevant part:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This exhaustion requirement serves two primary purposes: (1) to promote

efficient resolution of disputes; and (2) to protect agency authority by requiring adherence to

agency procedures and by allowing agencies an opportunity to correct their own mistakes.

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Exhaustion requirements are directed toward parties

who, "if given the choice, would not voluntarily exhaust." *Id.* Thus, to satisfy the PLRA

exhaustion requirement, a prisoner must "properly" exhaust administrative remedies, including

"compliance with an agency's deadlines." *Id.* at 90-91.

The Ninth Circuit has recognized, however, that a prisoner's failure to exhaust

administrative remedies may be excused "when circumstances render administrative remedies

'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (per curiam)

PAGE 3 – OPINION AND ORDER

(quoting *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). The court in *Sapp*

acknowledged several circumstances when conduct by prison officials would render

administrative remedies effectively unavailable: for example, when prison officials refuse to

provide the necessary forms, when prison officials threaten retaliation if grievances are filed, or

when improper screening of grievances wrongly forecloses administrative remedies. *Id.* at 822-

823 (collecting cases from other circuits).

## BACKGROUND

### A.  Muhammad's Complaints

In Case No. 6:21-cv-77-SI, Muhammad alleges that Corrections Officer Alexander Stair

(Officer Stair) violated Muhammad's rights under the United States and Oregon Constitutions

when, one evening while Muhammad was completing a sunset prayer in the dining hall, Officer

Stair told Muhammad that he could not pray in the dining hall. Muhammad works in the OSP

dining hall. He also practices Islam and believes his faith requires him to pray several times a

day. When Muhammad protested Officer Stair's order that Muhammad stop praying, Officer

Stair terminated Muhammad's employment in the dining hall. Muhammad also alleges that

Officer Stair's supervisor, Superintendent Brandon Kelly, permitted Officer Stair to deprive

Muhammad of Muhammad's federal and state constitutional rights.

In Case No. 6:21-cv-78-SI, Muhammad, who had his name legally changed, alleges that

Corrections Officer Evan Finn (Officer Finn), several unnamed OSP mail room employees, and

Attorney General Ellen Rosenblum (Attorney General Rosenblum) are causing him to receive

mail addressed to his former legal name. This, Muhammad alleges, violates his rights under the

Oregon and United States Constitutions.

Finally, in Case No. 6:21-cv-107-SI, Muhammad alleges that Corrections Officer Carla

Ruby (Officer Ruby) denied Muhammad his lunch meal, even though the "food port was still

PAGE 4 – OPINION AND ORDER

open" and Officer Ruby gave "white inmates" their lunch. Case No. 6:21-cv-107-SI, ECF 1 at 2.

Muhammad further alleges that he told an unnamed OSP sergeant that Officer Ruby denied him

lunch and the unnamed sergeant immediately "threw [Muhammad] in disciplinary segregation."

*Id.* at 3. Both Officer Ruby's refusal to give Muhammad lunch and the unnamed sergeant's

decision to place Muhammad in disciplinary segregation, Muhammad alleges, "violates the due

process and equal protection clauses of [the] Oregon and the U.S. const[itution]." *Id.*

## B.  Grievances Procedures

In each of these three cases, Defendants filed nearly identical declarations from OSP

Grievance Coordinator Adam Kidwell in support of Defendants' motions for summary judgment.

Kidwell's declarations describe the two avenues for administrative review available to adults in

custody at OSP. Both avenues are explained to adults in custody during the Admissions and

Orientation class that adults in custody attend soon after their arrival at OSP. Makeup

Admissions and Orientation classes are available for adults in custody who miss their first class.

Information about both administrative remedies also is included in the handbook that every adult

in custody receives upon admission, and instructions for completing grievance forms are

included on the forms themselves.

One avenue for administrative review is ODOC's Grievance Review System, which

permits review of misapplication of departmental policies, rules, or other directives by, or

unprofessional actions of, OSP employees. An adult in custody must submit his grievances

within 14 days of the complained of conduct, absent good cause for delay. When a grievance

form does not comply with the grievance rules, OSP staff return the grievance form to the adult

in custody with an explanation and allows the adult in custody to resubmit the grievance form

within 14 days. When OSP staff deny a grievance, the adult in custody may first appeal to the

institution's grievance coordinator within 14 days of OSP staff sending the adult in custody the

denial. If the OSP denies the first-level grievance appeal, the adult in custody may make a

second-level appeal within 14 days of OSP staff sending the adult in custody the denial of the

first-level appeal. Denial of the second-level appeal is final and exhausts the grievance process.

The second avenue for administrative review is the ODOC Discrimination Complaint

Review System, which investigates and resolves alleged discrimination against adults in custody

by ODOC employees. An adult in custody must submit his discrimination complaint within 14

days of the complained of conduct, absent good cause for delay. OSP staff will respond to the

complaint within 70 days unless further investigation is necessary. If the adult in custody wishes

to appeal the response to his discrimination complaint, that appeal must be filed with 14 days of

the response being sent to the adult in custody. Any response to the adult in custody's appeal is

final and exhausts the grievance process.

## C.  Muhammad's Grievances

Kidwell, who is an ODOC records custodian, declares that Muhammad, who was

admitted to OSP on June 7, 2019, has filed a total of four grievance forms during his time at

OSP. Those four grievance forms are attached as exhibits to Kidwell's declarations. Muhammad

submitted his first grievance on June 22, 2019. Muhammad complained about "a dirty,

contaminated tier" in the disciplinary segregation unit. *See* Kidwell Decl., Ex. 10 at 3. OSP staff

denied that grievance on July 5, 2019. Muhammad did not appeal.

Muhammad submitted his second grievance form on June 25, 2019. Muhammad

complained that a corrections officer denied him a "pork substituted meal," even though

Muhammad told the officer that Muhammad's faith prohibited him from eating pork. *See id.* at 1.

OSP staff returned that grievance to Muhammad on July 5, 2019 because the grievance did not

comply with grievance rules. Muhammad did not resubmit the grievance.

Muhammad filed his third grievance on August 8, 2020. He complained that an OSP

"food service coordinator . . . started unprofessionally talking loud and down to" Muhammad

while Muhammad tried to assist "a handicapped inmate." *See id.* at 5. OSP staff returned that

grievance to Muhammad on August 18, 2020 because it did not comply with grievance rules.

Muhammad did not resubmit the grievance. Muhammad filed his final grievance on August 14,

2020. Muhammad complained that an OSP employee denied him "a religious shower." *See id.*

at 11. OSP staff denied that grievance on August 20, 2020. Muhammad did not appeal.

## DISCUSSION

### A.  Failure to Exhaust

Under the PLRA, incarcerated plaintiffs are required to exhaust all administrative

remedies available to them within the institutions in which they are housed before they may

bring a federal action challenging prison conditions under federal law. *See* 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "proper exhaustion of administrative remedies, . . . 'means using all

steps that the agency holds out and doing so properly (so that the agency addresses the issues on

the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (quoting *Pozo v. McCaughtry*, 286

F.3d 1022, 1024 (7th Cir. 2002)). Failure to exhaust under the PLRA is an affirmative defense

that must be raised by the defendant to avoid waiver. *Jones v. Bock*, 549 U.S. 199, 211-12

(2007). If a court finds that an inmate did not comply with the exhaustion requirements of the

PLRA, the "proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315

F.3d 1108, 1119 (9th Cir. 2003).

Courts employ a burden-shifting regime to determine whether a defendant has proven

that a plaintiff failed to exhaust administrative remedies. *Williams v. Paramo*, 775 F.3d 1182,

1191 (9th Cir. 2015). First, the defendant must "prove that there was an available administrative

remedy, and that the prisoner did not exhaust that available remedy." *Id.* Second, "the burden

shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* An existing administrative remedy may be unavailable when (1) it "operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes . . . incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 1174, 136 S. Ct. 1850, 1859-60 (2016); *see also Sapp*, 623 F.3d at 822-23 (collecting cases). "The ultimate burden of proof . . . remains with the defendants." *Williams*, 775 F.3d at 1191.

A plaintiff will not satisfy his burden with generalized, conclusory statements that administrative remedies are unavailable. *See McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015); *cf. Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 793 (9th Cir. 2018) ("If the appellees in this case had alleged only general and unsubstantiated fears about possible retaliation . . . we would not hold that they had not exhausted their administrative remedies.") Thus, to show that officers are *consistently* unwilling to provide relief, a plaintiff must offer than a "conclusory statement that he asked for a grievance and unidentified floor officers would not give him one." *Moak v. Sacramento Cnty.*, 2017 WL 3208720, at \*9 (E.D. Cal. July 28, 2017). Instead, the plaintiff must offer "details concerning the alleged denials," and evidence that "he took additional steps to attempt to exhaust his remedies" beyond the initial denial. *Id.*; *see also Williams*, 775 F.3d at 119-92 (holding that the plaintiff met her burden of production when she produced evidence that she told one officer about the facts alleged in her complaint but the officer responded, "That is not my problem! That is your problem!" *and* a different officer refused to file the plaintiff's grievance and rejected her appeal).

Here, Defendants have carried their initial burden to prove that administrative remedies were generally available, and Muhammad did not exhaust those remedies. Defendants submitted uncontroverted evidence of two available avenues for administrative relief: the ODOC Grievance Procedure; and the ODOC Discrimination Complaint Review System. Muhammad does not argue that he filed either a grievance form or discrimination complaint with respect to the matters complained of in his three lawsuits at issue. Instead, Muhammad suggests that ODOC has "several [additional] ways to resolve grievance," including "kytes or inmate/staff communications, memos, tort claims; and other written and oral protests to (unjust) prison (cruel) conditions!" Case No. 6:21-cv-77-SI, ECF 17 at 2. Proper exhaustion, however, is use of "all steps that the *agency* holds out," *Woodford*, 548 U.S. at 90 (emphasis added), not the steps the plaintiff wishes to complete.

Because Defendants demonstrated that an administrative remedy was available to Muhammad, the burden shifts to Muhammad to show that "something particular in his case . . . made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Muhammad has filed several memorandums, declarations, and affidavits in these cases that are generally irrelevant[1], but even when the contents of those filings

---

[1] In Case No. 6:21-cv-107-SI, Muhammad filed a request for judicial notice (ECF 26) in which he asks the Court to take judicial notice of several purported points of law and a summary of facts not related to any of Muhammad's complaints in these cases. Judicial notice is only appropriate for information that "is generally known within the trial court's territorial jurisdiction" or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Because Muhammad's summary of facts is neither generally known within the Court's jurisdiction nor capable of being readily determined from a source of unquestionable accuracy, the Court cannot take judicial notice of the summary of facts. Additionally, because judicial notice under the Federal Rules of Evidence concerns only "'adjudicative' facts," *see* Federal Rules of Evidence 201(a), the Court declines to take judicial notice of Muhammad's statements of law. Thus, the Court denies Muhammad's Request for Judicial Notice in Case No. 6:21-cv-607-SI, ECF 26. Instead, the Court construes the factual contents of Muhammad's request for judicial notice as a declaration and considers those facts in ruling on Defendants' motions for summary judgment.

may be relevant to exhaustion, they mostly include generalized and conclusory allegations that administrative remedies are unavailable to Muhammad. *See, e.g.*, 6:21-cv-77-SI, ECF 17 at 3-4 (stating that "the (OSP)-(ODOC) Grievance Coordinator(s) is bias[ed] and also incompetent," that "the ODOC-OSP grievance process; is conducted by in-house; and partial; bias; racist-bigots; who cover for each others['] misdeeds," and that anytime Muhammad has mentioned his constitutional rights to OSP employee he has been "thrown in the . . . prison hole or disciplinary (isolated) segregation"); 6:21-cv-78-SI, ECF 25 at 3 (arguing that the "institution['s] grievance procedure is not just, fair [or] impartial; [nor] sound and based on constitutional safeguards; it is unreliable!"); 6:21-cv-78-SI, ECF 33 at 2 ("Plaintiff is punished; in retaliation (mens rea); by ODOC-OSP; on a perpetual basis, just for knowing the legal process!").

Some of Muhammad's filings do contain more specific statements, but even his more specific statements do not satisfy his burden to show that OSP's generally available administrative remedies were unavailable to him. First, Muhammad states that he was ejected from the Admissions and Orientation class, where adults in custody learn about ODOC's Grievance Procedure and Discrimination Complaint Review System. Defendants' declaration, however, explains that make-up Admissions and Orientation classes are available. Muhammad does not explain why he could not have attended a make-up class. Additionally, Defendants produced evidence showing that information about both types of administrative remedy is contained in the handbook that every adult in custody receives upon admission. Muhammad does not explain why he could not have consulted the handbook or how it may have been insufficient or incomplete. Moreover, the record reveals that Muhammad knew how to file grievances despite being ejected from the Admission and Orientation class: he has filed four grievances unrelated to the pending disputes during his time at OSP.

PAGE 10 – OPINION AND ORDER

In Case No. 6:21-cv-78-SI, Muhammad states that he "tried diligent to resolve and exhaust chain of command remedies; per (OSP); before filing a grievance; as is ODOC-OSP policy; but captain John Capaldo said 'There is nothing I can do about [equal protection] or [due process] and your religious rights'! Due process was stopped." Case No. 6:21-cv-78-SI, ECF 25 at 5. This statement does not prove that administrative remedies were unavailable to Muhammad.

It is useful to compare Muhammad's declarations to the evidence in *Williams*, another case in which the plaintiff's informal complaints to prison officials were rejected. *See* 775 F.3d at 1191-92 ("Williams . . . tried informing Officer Paramo about the facts alleged in her complaint, but . . . he did not help her and told her, 'So what! That is not my problem! That is your problem!'"). In *Williams*, the Ninth Circuit held that the plaintiff demonstrated that prison officials were unwilling to provide relief to aggrieved inmates because, in addition to disregarding an informal complaint, prison officials also "refused to file [Williams's] grievance and rejected her appeal." *Id.* at 1186. Muhammad, however, does not present evidence that he tried to submit a grievance after Captain Capaldo rejected Muhammad's informal complaint, much less that an OSP employee refused to file a grievance that Muhammad attempted to submit. *See also Moak*, 2017 WL 3208720, at *9 (requiring a plaintiff to offer evidence that "he took additional steps to attempt to exhaust his remedies" beyond the initial denial).

Finally, in Case No. 6:21-cv-107-SI, Muhammad states that he was placed in disciplinary segregation for informally complaining about discrimination by an OSP employee and that:

> While in [the disciplinary segregation unit] Plaintiff immediately tried to get grievance and other legal access materials from [disciplinary segregation unit officer] Hannon; who talked down to plaintiff . . . and then threw a legal library request (wrong) form at Plaintiff; which was unreasonable to provide plaintiff the materials needed to exhaust or to access this court; and that would take days or weeks to receive; if at all!

Case No. 6:21-cv-107-SI, ECF 18 at 2. The Court concludes that these statements do not satisfy

Muhammad's burden to show that OSP staff were "*consistently* unwilling to provide any relief to

aggrieved inmates." *Ross*, 136 S. Ct. at 1859 (emphasis added). Unlike in *Williams*, Muhammad

does not allege that an officer *refused* to file a grievance that Muhammad attempted to file.

*See* 775 F.3d at 1186 ("Correctional Counselor R. Cobb refused to file [Williams'] grievance and

rejected her appeal."). Indeed, based on Muhammad's declaration, one officer appears to have

attempted—albeit unsuccessfully—to provide Muhammad a grievance form.

Moreover, Muhammad has not offered evidence that he ever tried to file a grievance after

he was given the wrong form. *See Moak*, 2017 WL 3208720, at *9. That fact is particularly

salient here because Muhammad filed his complaint in federal court just five days after the

complained of incident, even though adults in custody have 14 days to file a grievance. Thus, it

appears that Muhammad simply decided to skip the grievance procedures because he preferred to

pursue his claims in federal court. That is precisely what the PLRA's exhaustion requirement is

designed to prevent. *See Woodford*, 548 U.S. at 90 ("[E]xhaustion requirements are designed to

deal with parties who do not want to exhaust . . . .").

Because Muhammad has not satisfied his burden of showing that OSP's generally

available administrative procedures were unavailable to him, the Court concludes that

Muhammad has failed to exhaust his administrative remedies. Thus, Defendants are entitled to

summary judgment on Muhammad's federal law claims. Further, to the extent that Muhmmad

asserts claims under the Oregon Constitution or other Oregon state law, the Court declines

exercise supplemental jurisdiction over those claims. *See Barnett v. McDowall*, 2013

WL 5574617, at *5 (D. Or. Oct. 7, 2013) (declining to exercise supplemental jurisdiction over a

plaintiff's state law claims after dismissing the plaintiff's federal law claims for failure to exhaust administrative remedies).

## B.  Muhammad's Claims Against Attorney General Rosenblum

In Case No. 6:21-cv-78-SI, Muhammad alleges that Attorney General Rosenblum is depriving him of his federal and state constitutional rights by causing Muhammad to receive mail addressed to his former legal name. In addition to seeking summary judgment against Muhammad's federal claims against Attorney General Rosenblum based on Muhammad's failure to exhaust, Defendants also argue that summary judgment is appropriate on Muhammad's federal claims against Attorney General Rosenblum because Attorney General Rosenblum was not personally involved in the alleged constitutional violation. Defendants also argue that they are entitled to summary judgment on Muhammad's state law claims against Attorney General Rosenblum because those claims are barred by Eleventh Amendment immunity.

Section 1983 does not permit a plaintiff to hold a state official liable under a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). Thus, Muhammad must plausibly allege and show a genuine issue that Attorney General Rosenblum personally participated in the alleged unconstitutional conduct. *See id.*; *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, the plaintiff . . . must plead that each Government-official defendant, through his own individual actions, has violated the Constitution."). Because Muhammad has presented no evidence that Attorney General Rosenblum personally caused him to receive mail addressed to his former legal name (or personally directed anyone to do that), Defendants are entitled to summary judgment on Muhammad's § 1983 claim against Attorney General Rosenblum. *See Anderson*, 477 U.S. at 252 (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to defeat a motion for summary judgment). The Court need not address

PAGE 13 – OPINION AND ORDER

Defendants' arguments about any state law claims asserted against Attorney General Rosenblum

because, as explained above, the Court declines to exercise supplemental jurisdiction over any of

Muhammad's state law claims.

## C.  Discovery Motions

There are several pending discovery motions in these cases. In both Case No. 6:21-cv-78-

SI and Case No. 6:21-cv-107-SI, Defendants move for a stay of discovery while their motions

for summary judgment are pending. Because the Court grants Defendants' motions for summary

judgment, Defendants' motions for a stay of discovery are moot.

In Case No. 6:21-cv-78-SI, Muhammad moves to compel discovery of: (1) all grievances

he has filed since May 3, 2019; (2) records of his communications with counselors in ODOC's

Bureau of Health Services "pertaining to religious and racial discrimination"; (3) an evaluation

of Muhammad conducted by doctors at the Oregon State Hospital in 2018 "pertaining to name

change and religious and racial discrimination"; (4) records of any tort claims Muhammad has

filed; and (5) records from Muhammad's March and May 2019 proceedings before Judge

Gregory Silvers. *See* Case No. 6:21-cv-78-SI, ECF 26 at 1-2.

There are several problems with Muhammad's discovery motion. First, Muhammad does

not appear to have sent (or propounded) these requests to Defendants. Thus, a motion to compel

is premature. Second, most of the documents that Muhammad requests do not appear to be

relevant to whether Muhammad has exhausted his administrative remedies in these cases. Third,

Defendants state that they have already complied with the one request for records that is relevant

to whether Muhammad exhausted his administrative remedies: his request for any grievances he

has filed since May 3, 2019. The Declaration of Adam Kidwell includes all grievances that

Muhammad has filed since he arrived at OSP on June 7, 2019. The Court notes that Muhammad

seeks grievances filed after May 3, 2019, not June 7, 2019, but because Muhammad was not

housed in OSP between May 3, 2019 and June 7, 2019, any grievances that Muhammad filed

between May 3, 2019 and June 7, 2019 would be irrelevant to whether Muhammad exhausted his

administrative remedies available *at OSP* for any grievances that Muhammad may have had

about *OSP* staff. For all these reasons, the Court denies Muhammad's motion to compel.

## CONCLUSION

In Case No. 6:21-cv-77-SI, the Court GRANTS Defendants' Motion for Summary

Judgment (ECF 14). The Court dismisses Muhammad's federal law claims against Defendants

without prejudice. The Court declines to supplemental exercise jurisdiction over Muhammad's

state law claims. In Case No. 6:21-cv-78-SI, the Court GRANTS Defendants' Motion for

Summary Judgment (ECF 20). The Court dismisses Muhammad's federal law claims against

Defendants Finn and unnamed OSP Mail Room employees without prejudice. The Court

dismisses Muhammad's federal law claims against Attorney General Ellen Rosenblum with

prejudice. The Court declines to exercise supplemental jurisdiction over Muhammad's state law

claims. The Court DENIES AS MOOT Defendants' Motion for Stay of Discovery (ECF 23) and

DENIES Muhammad's Amended Motion to Compel Discovery (ECF 26). In Case No. 6:21-cv-

107-SI, the Court GRANTS Defendants' Motion for Summary Judgment (ECF 14). The Court

dismisses Muhammad's federal law claims against Defendants without prejudice. The Court

declines to exercise supplemental jurisdiction over Muhammad's state law claims. The Court

DENIES AS MOOT Defendants' Motion for Stay of Discovery (ECF 16) and DENIES

Muhammad's Request for Judicial Notice (ECF 26).

**IT IS SO ORDERED.**

DATED this 9th day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 15 – OPINION AND ORDER